130 F.2d 90 (1942)
In re NEW YORK INVESTORS, Inc.
RECONSTRUCTION FINANCE CORPORATION
v.
KELBY et al.
No. 299.
Circuit Court of Appeals, Second Circuit.
July 27, 1942.
*91 Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer and Frank L. Dewey, both of New York City, of counsel), for appellants.
Max E. Sanders, of New York City, for appellee New York Investors, Inc.
Frueauff, Burns & Ruch, of New York City (Clinton J. Ruch and Ross W. Lynn, both of New York City, of counsel), for appellee Charles H. Kelby, trustee in bankruptcy.
Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
This is an appeal by the Reconstruction Finance Corporation, the largest creditor of the debtor, New York Investors, Inc., from an order denying its application for an allowance. Charles H. Kelby and Clifford S. Kelsey were successively appointed receivers in equity of New York Investors, Inc., and trustees in a proceeding for its reorganization brought under Section 77B, Bankr.Act, 11 U.S.C.A. § 207. After plans for reorganization failed and liquidation became necessary, Charles H. Kelby was appointed trustee in bankruptcy.
The question before us is whether the District Court properly denied the application of the RFC for an allowance for its services: (a) in opposing applications for compensation by the receivers in equity and their counsel, and by Edward Endelman, who represented an intervening committee of stockholders in the Prudence Company whose dividends had been guaranteed by New York Investors, Inc.; (b) in opposing the compensation claimed by Lawrence A. Baker, special tax counsel for the receivers, and also the compensation claimed by the trustees and their counsel in the 77B proceeding; (c) in opposing the compensation claimed in the 77B proceeding by counsel for the trustees, by Endelman, and by counsel for the debtor, for work done after December 18, 1938.
By taking an appeal and obtaining a modification of the order of the District Court granting allowances to the equity receivers and their counsel and to Mr. Endelman, the RFC saved the estate of New York Investors, Inc., $93,000. The allowances of $23,000 to Endelman were thereby eliminated; and the allowance of $110,000 to the receivers and their counsel was reduced by $70,000. This was accomplished solely by the efforts of the RFC. The receivers had refused to take any action to review the allowance to Endelman, though requested to do so by the RFC, and the only appeal from the allowances to the trustees, their counsel, or to Endelman was taken by the RFC.
As compensation for the work set forth in (a), supra, the RFC asks $15,000, and for that set forth in (b) and (c) it asks $2,500.
There can be no doubt that the services of the RFC in keeping down expenses in this as well as in other cases that have come to our attention have been advantageous to creditors. The law as to the proper manner of reviewing allowances to equity receivers and to succeeding trustees, appointed under Section 77B, was rather unsettled during the period following the enactment of Section 77B and required far more study and labor than might be anticipated in view of the apparent narrowness of the issues involved. The work of the RFC in opposing allowances which it deemed excessive continued over a number of years, involved large sums of money, and was extensive. Important results were achieved by its efforts and on the merits substantial compensation was earned. But the District Court denied any compensation because of our recent decisions: In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599; In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d 602; see also In re Postal Telegraph & Cable Corporation, 2 Cir., 119 F.2d 861; In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95. In these cases we in effect held that it was the duty of a trustee to perform all services requisite to the administration of the estate and that compensation could not be awarded from the estate to others than himself and his duly authorized attorneys and agents (1) unless they benefited the estate and (2) unless the trustee refused to act and formal authorization was procured from the court to proceed in his stead. In re Progress Lektro Shave Corporation, 2 Cir., 117 F. 2d at page 604.
The cautious procedure of requiring a preliminary order as a condition of later entertaining an application for payment for services at the expense of estates was adopted in order to mitigate, if not completely avoid, the harassing importunities of numerous claimants for allowances out of the property of insolvent debtors, and to relieve the District Courts from the embarrassment of passing upon the merits of *92 claims for compensation after all the services had been performed instead of determining initially whether the services were such as the trustees or their attorneys were bound to perform.
The rule we have adopted clearly applies to compensation for all the services mentioned in subdivisions (a), (b) and (c), supra, except those in which the receivers, trustees, or their attorneys may have had personal interests so opposed to those of the creditors that only the latter would be likely to question what was allowed. It is said that the same reasoning should apply to Endelman's allowances because the trustees refused to appeal from the order allowing them, though they were requested by the RFC to do so. But there was nothing to prevent an application by the RFC to the court for an order directing the trustees to appeal (and they were apparently appropriate persons to do so) or authorizing the RFC to do so in their stead. Under such circumstances, we think an application was necessary before the RFC was entitled to claim any compensation from the estate for appealing Endelman's allowances.
Compensation for opposing allowances to trustees and their counsel stands on a different footing from compensation for opposing allowances to third parties. Trustees cannot be expected to take appeals from their own allowances. They are in a scarcely better position to appeal from allowances to their counsel, who would certainly be unlikely to advise such appeals. It is true that the RFC might have applied to the District Court for an order authorizing it at the expense of the estate to raise objections to excessive compensation to the trustees and their attorneys, and to appeal from orders awarding too high compensation. But it seems to us that the efficient administration of the estate would have been but little promoted by such a step, even though it might have been better practice to seek a preliminary order. It is true that several creditors may seek compensation for opposing allowances to trustees and their attorneys, and then the very difficulties may arise which an initial order was designed to prevent. But denial of all compensation in a situation like the present entails great hardship to the applicant and brings few advantages to offset this hardship. Where the creditor has not unnecessarily duplicated the efforts of others, and where his services are such as the trustees cannot reasonably have been expected to peform, little difficulty can arise from omitting the requirement. Since this is so, we think that considerable freedom in raising objections, for the benefit of the estate, to allowances which the trustees are unable or most unlikely to question, may wisely be accorded to interested creditors, and we will not here penalize the applicant for a departure from the better practice which appears not to have prejudiced the administration of the estate.
Accordingly, the RFC should be compensated for its services in objecting to the allowances of the receivers and their counsel and in securing their reduction by $70,000 through their appeal. They cannot, however, be awarded compensation for services rendered in securing the denial of the allowance to Endelman because of their failure to apply for authority to act in behalf of the estate. Likewise, we think that no compensation should be allowed from the estate for services in respect to items in (b) and (c), supra. Although the RFC may have benefitted the creditors by opposing the claims of the trustees and their attorneys for compensation, which are set forth in (b) and (c), yet it is a mere guess how far, if at all, their efforts increased the sum available for distribution among the creditors and whether had there been no objections on the part of the RFC the court would not have made the same allowances as it did. Only the District Judge could have settled this doubt for only he could have known what affected his judgment in making the awards. On the other hand the saving to the estate by the appeal of $70,000 originally awarded to the receivers and their counsel is entirely clear.
The order will be modified so as to allow the RFC compensation out of the estate for services in opposing and securing the reduction of allowances sought by the trustees and their attorneys and we fix such compensation at the sum of $7,500.
Order modified accordingly.