## In re NEW YORK INVESTORS, Inc.
### No. 27367.

District Court, E. D. New York.

Feb. 15, 1943.

Frueauff, Burns & Ruch, of New York City, for trustee.

Robert P. Levis and Max E. Sanders, both of New York City, for bankrupt.

Schiff, Dorfman, Stein & Brof, of New York City (Archibald Palmer, of New York City, of counsel), for petitioning creditors.

Javits & Javits, of New York City (Emanuel Becker, of New York City, of counsel), for David Berdon & Co.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer, of New York City, of counsel), for Reconstruction Finance Corporation.

BYERS, District Judge.

Exceptions have been filed to the report of the referee dated January 27, 1943, fixing allowances, by the trustee and one creditor, but concerning only the following items:

The former challenges allowances:

To attorney for petitioning creditors ........................ $1,530.00

To David Berdon & Co., accountant ........................ 3,588.75

The creditor, Reconstruction Finance Corporation, excepts to the foregoing, and to the allowance

To attorney for bankrupt (in excess of $750) ................ 3,105.95

Total .................... $8,224.70

This bankruptcy proceeding is the result of the filing of a petition for reorganization on December 31, 1934, under the then Section 77B, Bankr.Act, 11 U.S.C.A. § 207, which developed into an order of liquidation in bankruptcy on December 14, 1938.

A petition in bankruptcy had been filed on October 13, 1933, which was abandoned after many of the allegations in the petition had been successfully contested, and apparently that proceeding lapsed, prior to or at the time that the petition for reorganization under Section 77B was filed.

The allowances under review are for services rendered in that primary bankruptcy proceeding.

The referee's report does not deal with allowances which were made in the 77B proceeding, although other of the voluminous papers now under examination indicate that the attorney for the bankrupt received allowances aggregating $11,500 for services performed in connection with an equity receivership (which antedated the bankruptcy) and in the said 77B proceedings.

The attorney for the petitioning creditors is said to have received an allowance of $750 plus disbursements in the 77B proceeding, and three of the petitioning creditors whom he represented in that aspect of the matter were the same persons for whom the petition was filed in the bankruptcy proceeding.

Reference is made to this subject because it would seem that the allowances made in connection with the 77B proceeding could have covered all services out of which that proceeding grew or as a result of which it was before the court. Section 244 of the present Act 11 U.S.C.A. § 644 seems to support such an inference.

A like situation was considered in Re Middle West Utilities Co., D. C., 17 F. Supp. 359, at page 371. So much of the language of that opinion justifies quotation: "The attorneys for the petitioners in the original bankruptcy suit ask compensation in the reorganization proceedings for services rendered prior to the filing of the 77B petition. There was no adjudication of bankruptcy. There was no administration of an estate in bankruptcy. There was no estate of a bankrupt."

The court is therefore without the benefit of any discussion by the referee of this aspect of the matter of the questioned allowances.

This proceeding bids fair to yield a dividend to creditors of slightly in excess of 2%, which is some reason for scrutinizing the pending application rather closely. Since the R.F.C. claims represent about 50% of the debts, its protests invite careful consideration.

Turning now to the items in question:

A. The allowance to the attorney for petitioning creditors.

This reveals a peculiar arrangement, in that Archibald Palmer seeks an allowance as counsel to Messrs. Schiff, Dorfman, Stein & Brof, who are not named as the attorneys of record in the notice to creditors concerning these applications. The referee states that Mr. Palmer says that he is entitled to 50% of the fee to be allowed to the said firm as attorneys for the petitioning creditors, and that he has assigned his participation therein to other attorneys to whom the award should be made.

Since the original proceeding came to nothing, it is difficult to see how the petitioning creditors rendered any service which was beneficial to the estate; it is customary to award to attorneys for petitioning creditors an allowance for their services to the extent that they contribute

to an adjudication in bankruptcy. That is a familiar rule in this circuit and probably requires no citation of authority. In the absence of a showing that such was the nature of the services for which compensation has been allowed, I am of the opinion that the exception to this aspect of the report must be sustained, and the allowance set aside.

B. The allowance to David Berdon & Co., accountant.

This subject is discussed by the referee in his report, and he construes an order which was entered at the instance of the petitioning creditors in the bankruptcy proceeding, to justify the allowance which he has approved. That order seems to have been dated November 9, 1933, and in terms permitted Edwin Mayer, the petitioner, and his accountants, to inspect and examine the books, records, accounts, etc., of the New York Investors, Inc., the alleged bankrupt, "at his own cost and expense with leave, however, to the said firm of accountants to apply to this Court, *pursuant to the rules of this Court,* in the event the above named alleged bankrupt is duly adjudicated a bankrupt or in the event of a composition, settlement or other form of adjustment, by an order of this Court, for compensation out of the said bankrupt estate in lieu and in place of any claim for compensation against the said petitioner * * *." (Italics supplied.)

The referee ignores General Order 45, 11 U.S.C.A. following section 53 as it was in effect at the date of the order, reading as follows: "No * * * accountant shall be employed by a receiver or trustee except upon an order of the court expressly fixing the amount of the compensation or the rate or measure thereof. * * *." And likewise Rule 5 of this court, which is too long to quote, but, in its then form, provided that no receiver or trustee in bankruptcy should employ an accountant except upon order of the court to be made by a Judge thereof, and not by a referee; and it goes on to provide quite in detail what must be shown on such an application. Apparently the referee thought that the order referred to either superseded these regulations or was not affected by them because the accountant in question had been employed by a petitioning creditor.

It seems obvious that restrictions applicable to an officer of the court, such as a receiver or trustee, could not be dispensed with for the benefit of a petitioning creditor, and as I read the order, it was not so intended.

If the foregoing reasoning is not conclusive, the language of the order itself indicates that the most that the accountants could do would be to *apply* to the court "pursuant to the rules of this Court * * * for compensation out of the said bankrupt estate * * *".

The order does not attempt to say that the application must be granted. Since the rules of the court did not provide for an accountant for petitioning creditors, the reference thereto was either inadvertent, or it meant that nothing not permitted by the rules was intended to be sanctioned by the order.

■ Since there is an entire lack of authority to grant the allowance sought, it follows that the award must be set aside.

C. The allowance to the attorney for the bankrupt.

The report treats of this subject somewhat in detail, and points out that the sum of $10,000 was sought, of which $3,000 was allowed. The report discusses four aspects of services rendered by the attorney for the bankrupt, but does not allocate the allowance according to the discussion, but grants the lump sum of $3,000 plus disbursements.

I should have supposed that the same reasoning which deprives the attorney for the petitioning creditors of an allowance for services in the bankruptcy proceeding which fell by the wayside, would equally dispose of this application, but the exception is limited to an allowance made for services other than for the preparation of schedules in bankruptcy, and as to that it is suggested that $750 is ample compensation.

■ The services discussed in the report, and stated at length in the petition and supporting affidavit, deal largely with matters which pertained to the duties of the trustee and the trustee's attorney, and the objection comes down to this: That the estate in bankruptcy should not be called upon to pay two firms of lawyers for doing the same work. There was a delay in the appointment of a trustee, and it may be that the reasoning is not entirely artificial, that it was part of the duty of the bankrupt to see that only legal claims were presented against it; thus the controversy

which arose. over the claims presented by the Reconstruction Finance Corporation against the New York Investors, Inc., and it probably is the fact that the trustee ultimately took advantage of the activities of the attorney for the bankrupt in these matters. In that case, it would seem as though there should have been a special retention to justify a charge for services which in fact were rendered to the trustee under the guise of aiding the bankrupt to perform its duty under Section 7 of the Act, Subdivision 3 of which specifies that the bankrupt is to "examine and report to his trustee concerning the correctness of all proofs of claims filed against his estate". 11 U.S.C.A. § 25, subd. 3.

It is always an unpleasant matter to deal with the question of the value of attorneys' services, and it is particularly difficult in this instance, because of the complicated and somewhat nebulous aspect of the successive proceedings; one unfamiliar with the developments cannot exactly draw a line of demarcation between services actually rendered in order to protect the rights of the bankrupt and those which were of a general and ostensibly altruistic nature. Cf. In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599, at page 601.

It is not understood, for instance, why it was necessary for the attorney for the bankrupt to participate in the cause reported in 2 Cir., 130 F.2d 90, although an ex parte order was secured from this court, authorizing such an appearance; it is not understood how the rights or duties of the bankrupt were involved in the disposition of that controversy, and I should think that one who injected himself into it can scarcely expect an award from the bankrupt estate for so doing.

■ It seems to me that proper administration of the Bankruptcy Act requires a strict adherence to the rule that the bankrupt's attorney shall be compensated for services necessarily rendered to and on behalf of the bankrupt, and that an award of $1500 for the preparation of schedules and attendance at the first meeting of creditors is adequate, and all that the present circumstances warrant.

With the modifications above set forth, the referee's report will be confirmed.

Settle order.