**GOCHENOUR et al. v. CLEVELAND TER-
MINALS BLDG. CO.
No. 9707.**

Circuit Court of Appeals, Sixth Circuit.
June 6, 1944.

Meyer Abrams, of Chicago, Ill. (Meyer Abrams, Harry J. Myerson, and Shulman, Shulman & Abrams, all of Chicago, Ill., on the brief), for appellants.

J. Hall Kellogg and Frederick L. Leckie, both of Cleveland, Ohio (Joseph G. Fogg, I. Walter Sharp, J. Hall Kellogg, and Hauxhurst, Inglis, Sharp & Cull, all of Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

The issues in this case are: (1) The failure of the trial court to allow costs and attorneys' fees to appellants, Meyer Abrams, Harry J. Myerson and Fannie B. Stern, executrix under the last will and testament of Joseph L. Stern, out of a fund paid into the Bankruptcy Court in a reorganization proceeding and (2) the allowance of such items to appellees, Frederick L. Leckie, Joseph G. Fogg and I. Walter Sharp.

The principal suit, The Cleveland Terminals Building Company v. George A. Ball, Frank B. Bernard, and George and Frances Ball Foundation, was terminated in the United States District Court for the Southern District of Indiana, by payment of $550,000 to the plaintiff in compromise.

The basis of the recovery has heretofore been detailed by this court in Gochenour v. Cleveland Terminals Building Co., 6 Cir., 118 F.2d 89 and In re Van Sweringen Co., 6 Cir., 119 F.2d 231.

The Cleveland Terminals Building Company, subsidiary debtor, a wholly owned subsidiary of the Vaness Company, was placed in bankruptcy reorganization under 77B of the Federal Bankruptcy Act, 11 U.S.C.A. § 207. When the proceedings were commenced there was pending in the Court of Common Pleas, Cuyahoga County, Ohio, a suit by A. B. Gochenour on his own behalf and for and on behalf of all holders of the first mortgage leasehold sinking fund six percent gold bonds of the debtor against the debtor's directors, seeking to recover damages from them for their alleged malfeasance and fraud in the management of the affairs of the corporation. In that action appellants were attorneys for petitioner.

Subsequently appellants, acting on behalf of creditors of the debtor, instituted two other actions each of which is described in Gochenour v. Cleveland Terminals Building Co., supra.

Certain claims were filed in the bankruptcy proceedings against the subsidiary debtor, The Cleveland Terminals Building Company, and appellants appearing as attorneys for some of the bondholders and creditors to which objections and exceptions were filed. Similar objections and exceptions were filed by attorneys representing the subsidiary debtor and other parties interested in the reorganization. Said objections and exceptions were sustained in In re Van Sweringen Co., supra.

On May 1, 1941, in the reorganization proceedings, appellees were appointed special counsel by the court to institute the action in which the recovery here in question was had. Appellants filed in the bankruptcy proceedings a petition for compensation and attached thereto a schedule itemizing their services, asking a joint allowance of $25,000 and the sum of $1,106.62 for court costs advanced by them.

Appellees also filed a joint petition with schedules attached asking for compensation of $75,000 and expenses of $182.18, and Paul Y. Davis filed an application for compensation in the amount of $3,500 and expenses of $36.74. The court referred all of these petitions to a Special Master who heard proof and filed a report in which he recommended that appellees be allowed $65,000 and expenses of $182.16 and that Paul Y. Davis be allowed $3,000 and expenses of $36.71. The Master recommended that nothing be allowed appellants.

The facts on which appellants base their claim are briefly as follows:

The debtor proceedings were commenced on October 13, 1936. On November 12, 1936, A. B. Gochenour, through appellants as his attorneys, moved to intervene in the proceedings. The motion was denied. Gochenour then had pending in the Court of Common Pleas, State of Ohio, Cuyahoga County, an action against the directors of the subsidiary debtor. Gochenour filed a motion in the reorganization proceeding asking the court to lift its injunction against the prosecution of that action. This motion was denied.

Prior to the institution of the reorganization proceedings, a Committee of the United States Senate was investigating railroad holding companies and in connection therewith, taking evidence. Appellant, Meyer Abrams, went to Washington and

examined the record of the proceeding before the Senate Committee, which record at that time was in galley proof and had not been released in a printed report. The evidence the Senate had heard showed the facts on which the recovery action was based. Abrams epitomized the evidence of the Senate Committee hearings pertaining to the subsidiary debtor and subsequently used the facts as a basis for objections to claims in the reorganization proceedings. At the request of the Special Master, while the claims were being considered, Abrams prepared a synopsis of the facts concerning the sale of the collateral which Midamerica had purchased and mailed it to all of the attorneys of record. On September 11, 1939, appellants, attorneys for John J. Howe and other creditors of the subsidiary debtor, instituted an action in the district court where the debtor proceedings were pending against the Midamerica and its officers, alleging that the officers had committed a fraud in the purchase of securities from J. P. Morgan & Company belonging to the subsidiary debtor. On October 11, 1939, the same attorneys, acting for the same parties, instituted an identical action in the United States District Court for the Southern District of Indiana against certain stockholders of Midamerica who were citizens of the State of Indiana. The attorneys filed a petition in the debtor proceedings in the District Court asking leave to make the subsidiary debtor a party to the Howe action. This petition was referred to a Special Master who recommended that it be denied because the subsidiary debtor was neither a proper nor necessary party to the suit.

On October 3, 1939, the subsidiary debtor filed a petition asking for instructions as to whether the subsidiary debtor should institute an action against Midamerica, its officers or stockholders or assignees, on claims the subsidiary debtor might have against any of the parties for profits realized by any one of them out of the purchase of the subsidiary debtor's securities from J. P. Morgan & Company. This petition was referred to a Master and notice was given to all parties in interest and a hearing had at which all of the facts were presented to the Master. All of the parties to this appeal appeared at the hearing. The Master reported that in the opinion of the parties present, the cost, expenses and counsel fees necessary to prosecute the action would amount to approximately $25,-000 and that the subsidiary debtor was without cash assets free from lien to conduct the litigation. The Master reported that counsel for the debtor wished to postpone action on the claim against Midamerica, its officers, stockholders and assignees until the objections and exceptions to claims in the main proceedings were finally settled and he recommended that this be done. The report of the Master was confirmed by the court.

On March 3, 1941, in Gochenour v. Cleveland Terminals Building Co., supra, we decided that the clients of the appellants were not at that time authorized to prosecute any of the actions they had instituted on behalf of bondholders or creditors of the subsidiary debtor against Midamerica or the officers or directors of the subsidiary debtor. However, we directed the trial court to appoint an examiner to ascertain the facts and report to the court and that if the facts found supported claims of the subsidiary debtor against other persons or corporations, the court should direct the subsidiary debtor to institute suits on such claims, or if the debtor was unable to prosecute such actions that appellants in that action (clients of appellants in this action) should be permitted to prosecute the suits on behalf of the subsidiary debtor.

On April 16, 1941, our decision in In re Van Sweringen Co., supra, settled the claims necessary to the prosecution of the action against Midamerica Corporation, its officers, stockholders and assignees.

On April 25, 1941, the subsidiary debtor filed petition for authority to institute suit against G. A. Ball and George and Frances Ball Foundation, assignees of Midamerica, which petition was approved on May 1, 1941, and the court authorized the subsidiary debtor to employ appellees to act as attorneys for the subsidiary debtor in the prosecution of the action. On May 12, 1941, the court appointed an examiner with broad powers to investigate and report whether there were sufficient facts to warrant the prosecution of actions for the benefit of the subsidiary debtor against the Terminal & Shaker Heights Realty Company (formerly Midamerica) or any of its officers or directors or its or their successors or assignees, and by a later order of the same date the examiner was authorized to investigate whether the facts warranted the prosecution of the action instituted by appellants' clients in the State

of Ohio. The examiner reported that all causes of action which the subsidiary debtor had against others had either theretofore been decided or were in process of settlement except the case of John J. Howe et al. v. The Terminal & Shaker Heights Realty Co., et al., pending in the District Court of the United States, Southern District of Ohio, Eastern Division.

The examiner also reported that the latter action was evidently filed to protect creditors of the subsidiary debtor in their rights against the Midamerica Corporation in case the subsidiary debtor abandoned said claim and that as the suit filed against G. A. Ball and George and Frances Ball Foundation related to the identical claim, the examiner recommended that said cause be dismissed. The examiner's report was approved by the court and appellees, as attorneys for the debtor, instituted the action to which we have heretofore referred.

Appellants' claim is predicated on the facts that, acting for their clients, appellants first ascertained and assembled the facts which showed that Midamerica and its successors and transferees had unlawfully received profits which belonged to the subsidiary debtor, Cleveland Terminals & Building Company, and that their filing of the Howe suit prevented the Statute of Limitations from running against the claim, and that the Howe suit primarily caused the filing of the suit against the Ball Foundation in the Indiana District Court. The Master found that appellants did examine the record in the hearing before the United States Senate Committee but that appellants were unaware that any cause of action against Midamerica or its stockholders or officers could be supported by the facts. In substance, the Master found that appellants were entitled to no compensation by reason of services rendered in any of the actions which they had brought because such suits were instituted without authority of the Bankruptcy Court and were of no substantial benefit to the estate of the subsidiary debtor. The Master also found that the Senate Committee created pursuant to Senate Resolution No. 71, 74th Congress, was conducting hearings before and after the institution of the present reorganization proceedings and that the evidence the Committee heard and the reports it made were public records and that the Master had personally received the Senate Committee reports. The present

Master acted throughout all of the reorganization proceedings relating to the subsidiary debtor. The Master adopted the Securities & Exchange Commission's statement that the services of appellants had been of no direct benefit to the estate but that indirectly their independent research work had been of assistance to the regularly appointed counsel in the preparation and prosecution of the suit against the Ball Foundation. However, the Master rejected the recommendation of the Securities & Exchange Commission that appellants be allowed a maximum sum for legal services of $5,000 on the ground that indirect benefit would not legally support an allowance to attorneys.

The court heard additional evidence on exceptions to the Master's report but approved his findings and conclusions. The judge stated that he had presided during the entire course of the subsidiary debtor's reorganization proceedings and was familiar with all of the facts in regard to the claim of the subsidiary debtor against the Midamerica Corporation and its assignees, the Balls and the Ball Foundation, and that any delay in the prosecution of the claim was at his direction. The judge further stated that none of the suits filed by appellants in regard to the claims of the subsidiary debtor nor the facts assembled by appellants concerning these claims were of any substantial benefit to the estate.

Appellants at all times acted without court authorization and their application to the court to act as attorneys on behalf of the creditors or of the subsidiary debtor in prosecution of the Midamerica claim was denied. During the period involved here, the subsidiary debtor had the services of supervisors and attorneys appointed by the court.

Appellants, as attorneys for a group of bondholder creditors have heretofore been awarded $18,000 for legal services in connection with the reorganization and in objections and exceptions to the claims of Midamerica Corporation and J. P. Morgan & Company against the subsidiary debtor. Abrams et al. v. Cleveland Terminals Building Co., 6 Cir., 136 F.2d 537.

Section 243 of the Bankruptcy Act, 11 U.S.C.A. § 643, provides in substance that the judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses

incurred by creditors and the attorneys for them in connection with the administration of the estate. This section of the Act relates entirely to matters in connection with the reorganization of the debtor and proceedings on behalf of creditors and stockholders. It comprehends matters directly affecting the plan of reorganization and excludes those indirectly affecting it.

■ Appellants, having been compensated for services rendered directly in connection with the reorganization, their claim here must me confined exclusively to beneficial services, if any, rendered to the subsidiary debtor in the prosecution of the claims against the Midamerica Corporation and its assignees, the Balls and the Ball Foundation. The claim in question was in existence at the time of the institution of the reorganization proceedings. It was a chose in action which passed to the subsidiary debtor in possession and it was the duty of the subsidiary debtor in possession to collect it. The claim was merely an incident to the reorganization proceeding. Whatever appellants did about the claim was in effect as attorneys for the subsidiary debtor and not as attorneys for creditors.

■ It is the duty of the court in administering the bankruptcy law to avoid double expense to the estate and before there can be an allowance to an attorney acting for the subsidiary debtor, the burden rests on the applicant for fees to show (1) that his services benefited the estate, (2) that the trustee or debtor in possession refused to act and (3) that formal authorization was procured from the court to proceed in the name of the trustee or the debtor in possession. In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599; In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d 602; In re New York Investors, Inc., 2 Cir., 130 F.2d 90.

■ Under General Order 44, 11 U.S.C.A. following section 53, an attorney for a receiver, trustee or debtor in possession can be appointed only upon order of the court granted upon a petition stating specified facts and the employment of the attorney must be for a specific purpose, unless the court is satisfied the case is one justifying a retainer. General Orders have the force of law. Weil v. Neary, 278 U.S. 160, 169, 49 S.Ct. 144, 73 L.Ed. 243. This General Order cannot be by-passed by the creditors or their attorneys acting for the debtor without the consent of the court. Since appellants do not bring themselves within the General Order in question, it is immaterial whether or not their services were beneficial to the subsidiary debtor. They are entitled to nothing here.

■ Section 242 of the Bankruptcy Act, 11 U.S.C.A. § 642, provides that the judge may allow reasonable compensation for services rendered and reimbursement for proper cost and expenses incurred in connection with the administration of an estate in a reorganization proceeding. The Act lodges a large discretion in the court of bankruptcy in fixing and allowing fees and compensation. In re Memphis St. R. Co., 6 Cir., 86 F.2d 891. The judgment of a court of bankruptcy regarding allowances of attorneys' fees should not be disturbed on appeal unless there is a clear abuse of discretion amounting to a manifest disregard of right and reason. Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 96 F.2d 219; Abrams et al. v. Cleveland Terminals Building Co., supra.

■ The trial judge is familiar with proceedings in his court and also has expert knowledge as to the value of legal services. He should, therefore, have a broad discretion on the subject since he has a far better means of measuring what is just and reasonable than an appellate court. Trustees v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157. The trial judge stated that the court had personal knowledge and a full understanding of the nature of the problems involved in the litigation here and the character of the services to be rendered by appellees and that the court knew the nature, extent and value of the legal services required and the type of services performed.

We have made a careful examination of the record and have given full consideration to the objections of appellants to the allowance to appellees. We find nothing showing that this allowance was clearly excessive or that the trial court abused its discretion in making such allowance.

Judgment affirmed.